# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CENTER FOR PUBLIC INTEGRITY,

   *Plaintiff*,

 v.

U.S. DEPARTMENT OF ENERGY,

   *Defendant*.

Civil Action No. 17-286 (TJK)

## MEMORANDUM OPINION & ORDER

Government contractors responsible for managing the United States' nuclear testing sites and laboratories submit annual performance evaluation plans and self-assessment reports to the United States Department of Energy. Plaintiff Center for Public Integrity filed this action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, seeking to compel the production of all such plans and reports from 2006 to 2011, as well as other documents, for several nuclear sites and laboratories. Defendant Department of Energy produced the plans and reports responsive to Plaintiff's request but withheld portions of those documents under FOIA Exemptions 4 and 5. Plaintiff disputes whether the Department of Energy's invocation of those exemptions was proper.

Before the Court are Defendant's Motion for Summary Judgment, ECF No. 19, and Plaintiff's Cross-Motion for Summary Judgment, ECF No. 21. For the reasons explained below, the Court will deny both motions without prejudice.[1]

---

[1] In reaching its conclusion, the Court considered all relevant filings including, but not limited to, the following: Plaintiff's Complaint, ECF No. 1 ("Compl."); Defendant's Motion for Summary Judgment, ECF No. 19 at 1–2; Defendant's Memorandum in Support of its Motion for Summary Judgment, ECF No. 19 at 3–12 ("Def.'s MSJ Br."); Defendant's Statement of Material Facts, ECF No. 19-1 ("Def.'s SMF"); Declaration of Christina H. Hamblen in Support of Defendant's

## I.    Background

In June 2015, Plaintiff filed a FOIA request with the Department of Energy ("the

Department") seeking the following documents from its component agency, the National Nuclear

Security Administration (NNSA):

> NNSA annual performance evaluation plans ("PEP"), annual performance
> evaluation reports ("PER"), correspondences with management and operation
> contractors announcing award fees (such as a fee determining letter or its
> equivalent) and any contractor self-evaluation report or correspondence submitted
> to NNSA for the purposes of fee award or annual performance valuation
> determinations for the following fiscal years at the following sites: 2006, 2007,
> 2008, 2009, 2010, and 2011 at Lawrence Livermore National Laboratory
> ("LLNL"), Los Alamos National Laboratory ("LANL"), National Security Campus
> ("Kansas City"), Nevada National Security Site ("NNSS"), Pantex Plant ("NPO,
> Pantex"), Sandia National Laboratories ("SNL"), Savanah River Site ("SRS"), and
> Y-12 National Security Complex ("NPO, Y-12").

Def.'s SMF ¶ 1.  Plaintiff also sought all correspondence from fiscal years 2006 to 2011 between

"management/operation contractors" at the listed sites and the "NNSA officials responsible for

determining fee awards" that contained the words "discretion" or "discretionary."  *Id.*

Following the filing of this suit in February 2017, Defendant produced over 13,000 pages

of relevant documents that contained material belonging to the NNSA or its management and

operating contractors.  *Id.* ¶¶ 4–5.  Defendant identified and redacted certain material under

FOIA Exemptions 3, 4, 5, 6, and 7.  *Id.* ¶ 6.  Plaintiff objects to those redactions based on

Exemptions 4 and 5.  *Id.* ¶ 7.  Under Exemption 4, Defendant withheld what it purports to be

---

Motion for Summary Judgment, ECF No. 20 ("Hamblen Decl."); Plaintiff's Cross-Motion for
Summary Judgment and Opposition to Defendant's Motion for Summary Judgment, ECF No. 21
at 1; Plaintiff's Memorandum in Support of its Cross-Motion for Summary Judgment and
Opposition to Defendant's Motion for Summary Judgment, ECF No. 21 at 2–6 ("Pl.'s MSJ Br.");
Defendant's Opposition to Plaintiff's Cross-Motion and Reply in Support of its Motion for
Summary Judgment, ECF No. 23 ("Def.'s Opp'n"); and Plaintiff's Reply in Support of its Cross-
Motion for Summary Judgment, ECF No. 25.

"confidential business proprietary information" from self-assessment reports submitted by Los Alamos National Security, LLC—the management and operating contractor for Los Alamos National Laboratory.  *Id.* ¶ 8; *see* Hamblen Decl., Ex. B.  Under Exemption 5, Defendant withheld information from performance evaluations and self-assessment reports submitted by Los Alamos National Security, LLC; Lawrence Livermore National Security, LLC; and National Technology and Engineering Solutions of Sandia, LLC.[2]  Hamblen Decl. ¶ 12; *id.*, Exs. B, D, E. In Defendant's view, those documents are "inter-agency or intra-agency memorandums" that contained information protected from mandatory disclosure by the deliberative process privilege. Def.'s SMF ¶ 9.

## II.    Legal Standard

The "vast majority" of FOIA cases are resolved on summary judgment motions.  *Brayton v. Office of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Summary judgment is appropriately granted when, viewing the evidence in the light most favorable to the non-movants and drawing all reasonable inferences accordingly, no reasonable jury could reach a verdict in their favor."  *Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016).

Under FOIA, a federal agency must "disclose information to the public upon reasonable request unless the records at issue fall within specifically delineated exemptions."  *Judicial*

---

[2] Lawrence Livermore National Security, LLC, and National Technology and Engineering Solutions of Sandia, LLC, are the management and operating contractors for Lawrence Livermore National Laboratory and Sandia National Laboratories, respectively.  *See* Hamblen Decl., Exs. D, E.

*Watch, Inc. v. FBI*, 522 F.3d 364, 366 (D.C. Cir. 2008).  There is a "strong presumption in favor

of disclosure," which "places the burden on the agency to justify the withholding of any

requested documents."  *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991).  An agency can

meet its burden by submitting affidavits or sworn declarations that "describe the justifications for

nondisclosure with reasonably specific detail, demonstrate that the information withheld

logically falls within the claimed exemption, and are not controverted by either contrary

evidence in the record nor by evidence of agency bad faith."  *PETA v. U.S. Dep't of Health &*

*Human Servs.*, 901 F.3d 343, 349 (D.C. Cir. 2018) (quoting *Larson v. Dep't of State*, 565 F.3d

857, 862 (D.C. Cir. 2009)).  In so doing, the agency cannot rely on "conclusory and generalized

allegations of exemptions."  *Morley v. CIA*, 508 F.3d 1108, 1115 (D.C. Cir. 2007).  Still,

"[a]gency affidavits—so long as they are relatively detailed and non-conclusory—are accorded a

presumption of good faith, which cannot be rebutted by purely speculative claims about the

existence and discoverability of other documents."  *Mobley v. CIA*, 806 F.3d 568, 581 (D.C. Cir.

2015) (internal quotation marks omitted) (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197,

1200 (D.C. Cir. 1991)).

### III.    Analysis

The Court will address the parties' arguments about FOIA Exemptions 4 and 5 in turn.

For the reasons explained, the Court will deny both parties' motions for summary judgment,

without prejudice, on all claims.

### A.    Exemption 4

Under Exemption 4, an agency may withhold "commercial or financial information

obtained from a person" that is "privileged or confidential."  5 U.S.C. § 552(b)(4).  Defendant

asserts that it withheld portions of self-assessment reports submitted by the management and

operating contractor for Los Alamos National Laboratory for fiscal years 2007–2011 that

contained "confidential commercial information."  Hamblen Decl. ¶¶ 8–9.  In briefing whether

Defendant properly relied on Exemption 4, the parties applied the test set forth by the D.C.

Circuit in *National Parks and Conservation Ass'n v. Morton*, 498 F.2d 765 (D.C. Cir. 1974).  *See*

Pl.'s MSJ Br. at 4; Def.'s MSJ Br. at 6.  Under the *National Parks* test, information submitted to

the government on a mandatory basis is "confidential" under Exemption 4 only if disclosure

would either (1) "impair the Government's ability to obtain necessary information in the future"

or (2) "cause substantial harm to the competitive position of the person from whom the

information was obtained."  498 F.2d at 770.

Following the submission of the parties' briefs, however, the Supreme Court substantially

altered the relevant standard for Exemption 4.  *See Food Marketing Inst. v. Argus Leader Media*,

129 S. Ct. 2356 (2019).  In *Food Marketing Institute*, the Supreme Court held that the term

"confidential" under Exemption 4 means "'private' or 'secret,'" and that it does not encompass a

requirement that the release of confidential information cause "substantial competitive harm."

*Id.* at 2363–64.  Because the pending motions were submitted before the Supreme Court handed

down the *Food Marketing Institute* decision, the Court will deny both without prejudice as to the

claims addressing Exemption 4 and allow the parties to file renewed motions.

### B.  Exemption 5

Defendant also redacted information from several performance evaluations and self-

assessment reports prepared by the management and operating contractors for Los Alamos

National Laboratory, Lawrence Livermore National Laboratory, and Sandia National

Laboratories under Exemption 5.  Hamblen Decl. ¶ 7.  Exemption 5 permits federal agencies to

withhold materials protected by the deliberative-process privilege, which "covers documents

reflecting advisory opinions, recommendations, and deliberations composing part of a process by

which governmental decisions and policies are formulated."  *Dep't of Interior v. Klamath Water*

*Users Protective Ass'n*, 532 U.S. 1, 8 (2001). According to a sworn declaration, Defendant

withheld information from the evaluations and reports based on its determination that the

information was submitted to assist the Department with certain agency decisions, including

"how performance fees and award term should be applied, how tasks should be prioritized in the

upcoming year, what changes to future contract performance are valid, and what changes in

DOE/NNSA policy may be warranted."[3] Hamblen Decl. ¶¶ 12–13.

As a threshold inquiry under Exemption 5, the Court must determine whether the

documents at issue are "inter-agency or intra-agency" communications. 5 U.S.C. § 552(b)(5);

*see also 100Reporters LLC v. U.S. Dep't of Justice*, 248 F. Supp. 3d 115, 146 (D.D.C. 2017).

Typically, to qualify as such a communication, the withheld material must have been generated

by a government agency. *Klamath*, 532 U.S. at 8. However, under what courts call the

"consultant corollary," "[w]hen an agency record is submitted by outside consultants as part of

the deliberative process, and it was solicited by the agency, [it is] entirely reasonable to deem the

resulting document to be an 'intra-agency' memorandum for purposes of determining the

applicability of Exemption 5." *Nat'l Inst. of Military Justice v. U.S. Dep't of Def.*, 512 F.3d 677,

680 (D.C. Cir. 2008) (quoting *Ryan v. Dep't of Justice*, 617 F.2d 781, 790 (D.C. Cir. 1980)). But

for the consultant corollary to apply, the outside consultant cannot "represent an interest of its

own, or the interest of any other client." *Klamath*, 532 U.S. at 11. Rather, "[i]ts only obligations

[must be] to truth and its sense of what good judgment calls for, and in those respects it functions

just as an employee would be expected to do." *Id.*

---

[3] By "award term," it appears that Defendant is referring to award-term contracting, defined by
federal regulation as "a method, based upon a pre-determined plan in the contract, to extend the
contract term for superior performance and to reduce the contract term for substandard or poor
performance." 48 C.F.R. § 3416.470.

The parties dispute whether the performance evaluations and self-assessment reports qualify as intra-agency communications under the consultant corollary based on the interests of the contractors in preparing those documents. *See* Pl.'s MSJ Br. at 5–6; Def.'s Opp'n at 5–8. Defendant did not address the contractors' interests in its declarations, although it asserts in its opposition brief that the corollary applies because the contractors were contractually bound to prepare the documents, did not "represent or advocate for any outside interests" in doing so, and "were not involved in any conflicts of interest" with the Department. Def.'s Opp'n at 7–8. In contrast, Plaintiff contends that the consultant corollary does not encompass the evaluations and reports because, in preparing them, the contractors "were making their cases for the performance awards they wanted Defendant to grant them," and thus were pursuing their own self-interest rather than the interests of the Department. Pl.'s MSJ Br. at 6.

Based on the existing record, the Court has insufficient information to determine whether, or to what extent, the consultant corollary applies to the material withheld from the performance evaluations and self-assessment reports. And what little relevant evidence *is* in the record is ambiguous on this point.

On the one hand, Plaintiff does not contest that the Department solicited the evaluations and reports from the contractors, who were contractually obligated to prepare and submit them. *See* Def.'s Opp'n at 8. Under this Circuit's precedent, the formal solicitation of advice in the aid of agency business supports the application of the corollary. *See Nat'l Institute of Military Justice*, 512 F.3d at 686. On the other hand, the Supreme Court has emphasized that the corollary applies only if "the consultant does not represent its own interest, or the interest of any other client, when it advises the agency that hires it." *Klamath*, 532 U.S. at 11. And the agency declarations submitted by Defendant provide little to no information on whether the contractors

had an interest in the outcome of whatever Department decisions flowed from their evaluations and reports. Defendant asserts, without reference to supporting statements in the declarations, that the contractors had no such self-interest. *See* Def.'s Opp'n at 7–8. But the declarations suggest that the contractors may have had at least some interest in the Department's decisions related to performance fees and award-term contracts. For example, in addressing Defendants' withholdings under Exemption 4, the declarations state that the evaluations and reports contained "competition-sensitive" information given the Department's "upcoming contract competition," such as "frank appraisals of [a contractor's] own shortcomings." Hamblen Decl., Ex. B. ¶ 6; *id.* ¶¶ 9, 12–13.

Indeed, the relevant declaration simply asserts, without additional context, that the information withheld under Exemption 5 pertained to decisions ranging from "how performance fees and award term should be applied" to "what changes in DOE/NNSA policy may be warranted." Hamblen Decl. ¶ 13. The latter seems like the kind of decision that would clearly flow from an intra-agency communication under Circuit precedent—but perhaps not the former, depending on the specifics. Without more, the Court has no basis to determine whether, or to what extent, the withheld material reflects the contractors representing their own interests, and therefore whether the material qualifies as intra-agency communications. Accordingly, the Court cannot conclude that Defendant has satisfied the threshold requirement for asserting the deliberative process privilege. For this reason, the Court will deny Defendant's motion for summary judgment without prejudice as to the claim addressing Exemption 5 and allow it to file a renewed motion with another declaration addressing this issue.

At the same time, Plaintiff has alleged no facts, and submitted no evidence, in support of its assertion that, "when preparing the records at issue here, the contractors were making their

cases for the performance awards that they wanted Defendant to grant them." Pl.'s MSJ Br. at 6. On this record, the Court has no basis to determine whether, or to what extent, those were indeed the circumstances here. Thus, because the Court cannot conclude that Plaintiff is entitled to judgment, the Court will also deny, without prejudice, Plaintiff's motion for summary judgment and allow it to file a renewed motion with any additional details in support of its claims.

## IV. Conclusion and Order

For all of the above reasons, it is hereby **ORDERED** that Defendant's Motion for Summary Judgment, ECF No. 19, is **DENIED** without prejudice, and Plaintiff's Cross-Motion for Summary Judgment, ECF No. 21, **DENIED** without prejudice. It is further **ORDERED** that the parties shall meet, confer, and submit a joint schedule for briefing renewed motions for summary judgment by July 29, 2019.

**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: July 15, 2019